IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| THE JOSEPH PAUL CORPORATION, D/B/A JOSEPH PAUL HOMES, | § § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 16-CV-1651 |
| v. | § § | |
| TRADEMARK CUSTOM HOMES, INC., ERIC EMIL JOHNSON, CASH MCWHORTER, AND KIMBERLY MCWHORTER, | § § § § § | |
| *Defendants.* | § | |

## COMPLAINT

Plaintiff The Joseph Paul Homes ("JP Homes") files this Complaint against Defendants Trademark Homes, Inc. ("Trademark") and its principal, Eric Emil Johnson ("Johnson"), as well as Cash McWhorter, and Kimberly McWhorter (collectively, the "McWhorter Defendants"). The Defendants, individually and collectively, have engaged in acts of copyright infringement and contributory infringement, as they have made and used copies of copyrighted architectural works belonging to JP Homes. In addition, Trademark has violated the Lanham Act by palming off designs and work of JP Homes as its own. JP Homes seeks damages and preliminary and permanent injunctive relief to prevent further acts of infringement and unfair competition.

## Parties

1.      Plaintiff The Joseph Paul Corporation, d/b/a Joseph Paul Homes, is a Texas corporation. Its principal place of business is located in Collin County, Texas.

2.      Defendant Trademark Custom Homes, Inc. is a Texas corporation. Its principal place of business is located in Dallas County, Texas. It may be served with process through its registered agent, Eric Emil Johnson, at 1303 Liverpool Ln., Mansfield, TX 76063, or at its principal place of business, which is located at 675 Town Square, Suite #200, Garland, Texas 75040, wherever its officers may be found.

3.      Defendant Eric Emil Johnson is an individual who resides at 1303 Liverpool Ln., Mansfield, TX 76063.

4.      Defendants Cash McWhorter and Kimberly McWhorter are Texas residents. They can be served with process at their residence, located at 318 Prairie Creek Trail, Murphy, Texas 75094, or wherever they may be found.

## Jurisdiction and Venue

5.      The Court has federal question jurisdiction under the Copyright Act, 28 U.S.C. § 1338(a). This Court also has federal question jurisdiction under the Lanham Act, 15 U.S.C. § 1125(a). The Court has supplemental jurisdiction over the pendant state-law claims pursuant to 28 U.S.C. 1367(a).

6.      The Court has personal jurisdiction over the Defendants, each of which is a Texas resident or citizen.

7.      This Court has venue under 28 U.S.C. § 1400(a), as at least one Defendant resides or may found in this district.

## Factual Allegations Applicable to All Causes of Action

8.      JP Homes designs and builds custom homes. It has done so for approximately eight years in North Texas. JP Homes has been recognized as one of best homebuilders in the Dallas area by D Home Magazine.

9.      JP Homes owns the copyright in and to the architectural plans, drawings, and work

(the "Plans") concerning a house known as "The Martinique." Joseph Vastano, JP Homes'

president, developed the Plans and filed the application for the copyright. Application No. 1-

3092398029 for the copyright for the plans, the fee, and the deposit of a specimen of the plans was

submitted to the U.S. Copyright Office on February 2, 2016. The rights to the application and the

copyright were assigned to JP Homes.

10.      The Plans and the design of the house constitute architectural works under 17

U.S.C. § 101.

11.      JP Homes owns the entire copyright, including the right to reproduce the

copyrighted work in copies and to prepare derivative works based upon the copyrighted work. 17

U.S.C. §§ 106(1) & (2).

12.      The McWhorter Defendants wanted to build a house. They approached JP Homes

to design and build the house for them.

13.      The McWhorter Defendants told JP Homes that they intended to use JP Homes as

the designer and builder of a house. Based on the McWhorter Defendants' promises and

representations, JP Homes (and its president) intended to develop and use its architectural plans

and designs for the McWhorter project.

14.      In addition to Vastano's efforts in designing the house, JP Homes made plans and

estimates regarding the costs of construction of the house based on finishes, appliances, and other

specific details for the house.

15.      After being presented with the estimated costs of construction, the McWhorters

asked JP Homes to make revisions to reduce the costs of the project. JP Homes complied with the

request. For the most part, the revisions involved elements of the house that were variable, such as

the finishes, appliances, and other aspects of the house that would not change the overall design or look and feel of the design of the house.

16.     Copies of the Plans were shown and provided to the McWhorters. Accordingly, the McWhorter Defendants had access to the Plans.

17.     The McWhorter Defendants subsequently represented to JP Homes they intended to defer building the house. The McWhorter Defendants represented to JP Homes that they were going to use this additional time to save money to fund the construction of the house so that they could afford to use their preferred types of finishes, appliances, and other functional aspects of the house.

18.     The McWhorter Defendants' representations to JP Homes were false and misleading.

19.     Rather than continue the project with JP Homes, the McWhorter Defendants decided to use JP Homes' Plans to build the house with another builder. The McWorther Defendants did not request, or obtain, permission to copy use or use the plans from JP Homes.

20.     Upon information and belief, the McWhorter Defendants provided copies of the Plans to Johnson and Trademark.

21.     Upon information and belief, Johnson and Trademark made copies of the Plans and made derivative works from the Plans.

22.     Trademark has started to build a house for the McWhorters. An inspection of the house shows that it is the same or substantially similar in design, look, and feel to the house JP Homes designed in the Plans.

23.     The plans used by Trademark to obtain permits to construct the house, and the plans used to build the house, are the same as, or substantially similar to, the copyrighted Plans. Copies of the plans used by Trademark have the same look and feel as the copyrighted originals.

24.     A side-by-side comparison of the Plans and the plans and drawings used by Trademark show that JP Homes' Plans were copied.

25.     Johnson directs, controls, ratifies, and is a moving force behind Trademark's efforts with respect to the copying of the Plans and the building of the infringing house. The McWhorters have directed Johnson and Trademark to use the infringing plans and designs for the McWhorter House

26.     The McWhorters, Johnson, and Trademark's acts infringe the copyright in the Plans, as well as the architectural work and the look and feel of the house that is embodied in JP Homes' Plans and drawings.

27.     The McWhorter Defendants, Trademark, and Johnson have acted knowingly, intentionally, and deliberately.

28.     Johnson and Trademark are familiar with JP Homes' work. Johnson worked with other individuals who sold and built homes in in communities where JP Homes is established.

29.     Trademark advertises and markets itself using photographs of a house that JP Homes designed. This advertising and marketing effort includes on-line advertisements and photographs posted on Facebook, Houzz, Twitter, Pinterest, and Home and Land Magazine. Trademark's advertising and marketing efforts are misleading, as it would lead an ordinary consumer to believe that Trademark designed the house.

30.     On the strength of JP Homes' design, Trademark wrongfully received recognition as one of the best builders in the Dallas area by D Home Magazine. The photograph used in the D

Home display ad for Trademark is a house that was designed by JP Homes. *See* http://trademarkhomestx.com/wp-content/uploads/2016/05/DHome-Voted-Best-Home-Builders-2016.pdf. Trademark also received recognition as one of the Best of Garland in 2016.

31.     Trademark is competing in the same neighborhoods and areas where JP Homes works. Trademark's efforts are likely to lead to consumer confusion.

## CLAIMS

### COUNT I—COPYRIGHT INFRINGEMENT
### Against Trademark, Johnson, and the McWhorter Defendants

32.     All paragraphs are incorporated as if set forth herein.

33.     JP Homes is the owner of a valid copyright.

34.     JP Homes is the owner of the copyright for The Martinique reflected in U.S. Copyright Application Number 1-3092398029, filed on February 2, 2016. The initial application and the copyright were assigned to JP Homes by Vastano.

35.     Johnson and Trademark copied and improperly appropriated original elements from the copyrighted work.

36.     The McWhorter Defendants copied and improperly appropriated original elements from the copyrighted work.

37.     The McWhorter Defendants had access to JP Homes' copyrighted work and there are substantial similarities between plans used for the McWhorter house that is currently under construction and the copyrighted work.

38.     Johnson and Trademark, through the McWhorter Defendants, had access to JP Homes' copyrighted work and there are substantial similarities between plans used for the McWhorter house that is currently under construction and the copyrighted work.

39.     Johnson, Trademark, and the McWhorter Defendants engaged in their acts of infringement with knowledge or with reckless disregard and willful blindness to JP Homes' rights.

40.     JP Homes seeks its actual damages, the Defendants' profits, direct and indirect profits, statutory damages, attorney's fees.

41.     JP Homes further seeks a temporary restraining order, and preliminary and permanent injunctive relief against continued and future acts of infringement. This injunctive relief includes, but is not limited to, an order that Defendants, and all those acting in concert with them, cease using all infringing plans, that all infringing copies be destroyed that the sale of all in bringing work he enjoined in the absence of consent from JP Homes, and that the structure built using the infringing plans either be torn down and removed or modified sufficiently so as not to infringe upon JP Homes' copyright.

## COUNT II—CONTRIBUTORY COPYRIGHT INFRINGEMENT
### Against Trademark, Johnson, and the McWhorter Defendants

42.     All paragraphs are incorporated as if set forth herein.

43.     Trademark and Johnson knew or had reason to know about the McWhorter Defendants' infringing activity with respect to the Plans.

44.     Trademark and Johnson intentionally induced and materially contributed to the McWhorter Defendants' infringing activity with respect to the Plans.

45.     The McWhorter Defendants knew or had reason to know about Trademark and Johnson's infringing activity with respect to the Plans.

46.     The McWhorter Defendants induced and materially contributed to Trademark and Johnson's infringing activity with respect to the Plans.

47.     Trademark, Johnson, and the McWhorter Defendants engaged in their acts of contributory infringement with knowledge or with reckless disregard and willful blindness to JP Homes' rights.

48.     JP Homes seeks its actual damages, the Defendants' profits, direct and indirect profits, statutory damages, attorney's fees.

49.     JP Homes further seeks a temporary restraining order, and preliminary and permanent injunctive relief against continued and future acts of contributory infringement. This injunctive relief includes, but is not limited to, an order that Defendants, and all those acting in concert with them, cease using all infringing plans, that all infringing copies be destroyed, that the sale of all infringing work be enjoined in the absence of consent from JP Homes, and that the structure built using the infringing plans either be torn down and removed or modified sufficiently so as not to infringe upon JP Homes' copyright.

## COUNT II—VICARIOUS COPYRIGHT INFRINGEMENT
### Against Trademark, Johnson, and the McWhorter Defendants

50.     All paragraphs are incorporated as if set forth herein.

51.      Trademark and Johnson are vicariously liable for the McWhorter Defendants' acts of infringement.

52.     Trademark and Johnson have profited from the McWhorter Defendants' infringement.

53.     Trademark and Johnson had the right and ability to stop or limit the infringement by the McWhorter Defendants, but failed to do.

54.     The McWhorter Defendants are vicariously liable for Trademark and Johnson's acts of infringement.

55.     The McWhorter Defendants have profited from Trademark and Johnson's acts of infringement.

56.     The McWhorter Defendants had the right and ability to stop or limit the infringement by Trademark and Johnson, but failed to do so.

57.     Trademark and Johnson are vicariously liable for the McWhorter Defendants' acts of infringement. Trademark and Johnson have profited from the McWhorter Defendants' infringement. Trademark and Johnson had the right and ability to stop or limit the infringement by the McWhorter Defendants, but failed to do so.

58.     JP Homes seeks its actual damages, the Defendants' profits, direct and indirect profits, statutory damages, attorney's fees.

59.     JP Homes further seeks a temporary restraining order, and preliminary and permanent injunctive relief against continued and future acts of contributory infringement. This injunctive relief includes, but is not limited to, an order that Defendants, and all those acting in concert with them, cease using all infringing plans, an order that all infringing copies be destroyed, an order that no infringing work may be sold without JP Homes' consent and that the structure built using the infringing plans either be torn down and removed or modified sufficiently so as not to infringe upon JP Homes' copyright.

## COUNT III—FALSE ADVERTISING AND
## UNFAIR COMPETITION UNDER THE LANHAM ACT
### Against Trademark

60.     All paragraphs are incorporated as if set forth in full.

61.     Trademark has made a false or misleading statement of fact and has mislead consumers in a commercial advertisement about its products, including the designation of origin

of the house depicted on Trademark's D Home Magazine display advertisement and the first page of Trademark's website.

62.     These false and misleading statements were made on Facebook, Houzz, Twitter, Pinterest, and Home and Land Magazine and on the Trademark internet website.

63.     The false and misleading statements have been made intentionally and willfully.

64.     The statements either deceived or had the capacity to deceive a substantial segment of potential customers. The statements are likely to mislead potential customers of the origin of the design of the house.

65.     The deception is material and was likely to influence the purchasing decision.

66.     The product is in interstate commerce.

67.     JP Homes has been or is likely to be injured as a result of the false and misleading statements of statements Trademark.

68.     JP Homes seeks actual damages, attorney's fees, and preliminary and permanent injunctive relief against further false statements.

## COUNT IV—FRAUD
### Against the McWhorter Defendants

69.     All paragraphs are incorporated as if set forth in full

70.     The McWhorter Defendants represented to JP Homes that they were deferring their moving forward with building a house because they were going to use additional time to save money to fund the construction of the house so that they could afford to use their preferred types of finishes, appliances, and other functional aspects of the house.

71.     These statements were materially false and misleading.

72.     JP Homes acted in reliance on the false and misleading statements. For example, JP Homes provided copies of the Plans to the McWhorters and allowed the McWhorters to retain those plans. JP Homes' reliance was reasonable, as it had no reason to believe that the McWhorters intended to use JP Homes' Plans to build a house with another builder.

73.     The McWhorter Defendants also committed fraud by omission and concealment. The McWhorter Defendants failed to disclose to JP Homes that they intended to, and did, move forward with the development and construction of the McWhorter House using JP Homes Plans.

74.     As a result, JP Homes was damaged. These damages included, but are not limited to, the value of the time and effort spent developing building budget and plans, as well as the losses it suffered as a result of the misuse of the Plans.

75.     JP Homes seeks actual, consequential, lost profits, and exemplary damages as a result of the McWhorter Defendants' fraud.

**Prayer for Relief**

Plaintiff JP Homes respectfully requests that the Court enter judgment in its favor and against the Defendants for actual damages, consequential damages, statutory damages, punitive damages, attorney's fees, costs of court, as well as preliminary and permanent injunctive relief as requested above, and that the Court grant such other and further relief deemed just and proper.

Dated: June 20, 2016                          Respectfully submitted,


                                              */s/ Jeffrey Goldfarb*
                                              Jeffrey Goldfarb
                                              Texas Bar No. 00793820
                                              GOLDFARB PLLC
                                              Saint Ann Court
                                              2501 N. Harwood, Suite 1801
                                              Dallas, Texas 75201
                                              Tel.: (214) 583-2233
                                              Fax: (214) 583-2234
                                              jgoldfarb@goldfarbpllc.com

                                              **ATTORNEYS FOR PLAINTIFF THE
                                              JOSEPH PAUL HOMES CORPORATION
                                              d/b/a JOSEPH PAUL HOMES**