IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE JOSEPH PAUL CORPORATION** | § | |
| **d/b/a JOSEPH PAUL HOMES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-1651-L** |
| | § | |
| **TRADEMARK CUSTOM HOMES, INC.;** | § | |
| **ERIC EMIL JOHNSON; CASH** | § | |
| **MCWHORTER; AND KIMBERLY** | § | |
| **MCWHORTER,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") (Doc. 7), filed June 21, 2016; Defendants Trademark Custom Homes, Inc. and Eric Emil Johnson' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Doc. 19), filed July 19, 2016; Plaintiff's request for a hearing on its Motion for Preliminary Injunction and request to consolidate the hearing with the trial on the merits under Rule 65(a)(2) (Docs. 25, 28), filed July 26, 2016;[1] Defendants Cash McWhorter's and Kimberly McWhorter's (collectively "the McWhorters") Motion to Strike Plaintiff's Reply Brief and Appendix to its Reply to McWhorters' Response in Opposition to Request for Temporary Restraining Order and Preliminary Injunction and, alternatively, Motion for Leave to File Surreply ("Motion to Strike") (Doc. 31), filed August 5, 2016; and Plaintiff's Motion for Hearing (Doc. 41), filed September 8, 2016.

---

[1] This request appears in Plaintiff's replies, which were filed in support of its Motion for injunctive relief.

**Memorandum Opinion and Order - Page 1**

After considering the motions, briefs, evidence, and applicable law, the court **denies** Defendants Trademark Custom Homes, Inc. and Eric Emil Johnson' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Doc. 19); **denies** Plaintiff's Motion for Temporary Restraining Order and  Preliminary Injunction (Doc. 7); **denies as moot** Plaintiff's request for a hearing on its Motion for Preliminary Injunction and request to consolidate the hearing on the Motion for Preliminary Injunction with the trial on the merits before Defendants have had the opportunity to conduct discovery (Docs. 25, 28); **denies as moot** Defendants Cash McWhorter's and Kimberly McWhorter's Motion to Strike Plaintiff's Reply Brief and Appendix to its Reply to McWhorters' Response in Opposition to Request for Temporary Restraining Order and Preliminary Injunction and, alternatively, Motion for Leave to File Surreply (Doc. 31); and **denies as moot** Plaintiff's Motion for Hearing (Doc. 41).

## I.      Factual and Procedural Background

On June 20, 2016, Plaintiff The Joseph Paul Corporation d/b/a The Joseph Paul Homes ("JP Homes" or "Plaintiff") filed this action against Defendants Trademark Custom Homes, Inc. ("Trademark"), Trademark's principal Eric Emil Johnson ("Johnson"), and homeowners Cash McWhorter and Kimberly McWhorter (collectively, "the McWhorters").  The court refers to all Defendants collectively as "Defendants" when appropriate.  According to Plaintiff's Complaint, JP Homes designs and builds custom homes and has done so for approximately eight years in North Texas.  Plaintiff alleges that it owns the copyright to the architectural plans, drawings, and work for the house design known as "The Martinique," and that Defendants copied and improperly appropriated original elements of JP Homes's copyrighted work in The Martinique.  Pl.'s Compl. ¶¶ 9, 35, 36.   JP Homes asserts claims against all Defendants for copyright infringement,

contributory copyright infringement, and vicarious copyright infringement.  Plaintiff also asserts a claim of false advertising and unfair competition in violation of the Lanham Act against Trademark, and a common law fraud claim against the McWhorters.   Plaintiff seeks actual damages, consequential damages, statutory damages, punitive damages, attorney's fees, costs of court, as well as preliminary and permanent injunctive relief against Defendants.

On June 21, 2016, Plaintiff filed a separate Motion for Temporary Restraining Order and Preliminary Injunction to enjoin the construction of the McWhorters' house that is currently being built by Trademark. Plaintiff contends that the McWhorters, without JP Homes's permission, provided JP Homes's copyrighted architectural plan for The Martinique to Trademark and Johnson, and Trademark is using the copyrighted plan, or a plan that is substantially similar, to build the McWhorters' house.  Plaintiff alleges that Trademark has misled consumers by using photographs of a house designed by JP Homes in advertising its own products in D Home Magazine, Facebook, Houzz, Twitter, Pinterest, Land and Home Magazine, and Trademark's website.[2]  In addition to damages, Plaintiff seeks to halt the construction of the McWhorters' house and enjoin the McWhorters from further acts of direct, contributory, and vicarious infringement.  Plaintiff contends that Defendants should either be required to alter the McWhorters' house, so it will not infringe Plaintiff's copyright, or they should be required to remove the structure.  In its Complaint, Plaintiff requests entry of a temporary restraining order ("TRO") and preliminary injunction that would preclude Trademark and Johnson from infringing JP Homes' registered copyrights and copyrighted architectural plans and drawings in the future as follows:

---

[2] Plaintiff's allegation in its pleadings that "Trademark advertises and markets itself using photographs of a house that JP Homes designed" appears to refer to a house, other than the one being built  by Trademark for the McWhorters, that was built using architectural plans different from The Martinique.

**Memorandum Opinion and Order - Page 3**

> This injunctive relief includes, but is not limited to, an order that Defendants, and all those acting in concert with them, cease using all infringing plans, that all infringing copies be destroyed[,] that the sale of all in bringing work he enjoined in the absence of consent from JP Homes, and that the structure built using the infringing plans either be torn down and removed or modified sufficiently so as not to infringe upon JP Homes' copyright.

Pl.'s Compl. ¶ 41.  Plaintiff's copyright infringement claim is based on Defendants' conduct in building the McWhorters' house using an allegedly infringing copy of The Martinique plans, whereas, the foregoing requested injunctive relief in Plaintiff's Complaint appears to extend beyond JP Homes's plans for The Martinique.  The injunctive relief specified in Plaintiff's Motion appears to similarly extend beyond the McWhorters' house and the allegedly infringing plans being used to build that house, although Plaintiff's Motion is based solely on its copyright claim, which focuses on JP Homes's "The Martinique" plan and the McWhorters' house.[3]  *See* Pl.'s Mot. 2.

In support of its Motion, Plaintiff submitted the Declaration of Joseph Vastano ("Vastano"), JP Homes's president.  Attached to Vastano's declaration are the following eight exhibits:

(1) Copyright Application No. 1-3092398029, dated February 2, 2016, for The Martinique;

(2) architectural plans for The Martinique;

(3) an automated e-mail, dated February 2, 2016, from the United States Copyright office acknowledging receipt of the application and application fee for The Martinique;

---

[3]  In its Motion, Plaintiff requests injunctive relief that "includes an order that Defendants, and all those acting in concert with them, cease using all infringing plans and drawings, and an order enjoining the continued construction of the infringing house." Pl.'s Mot. 2.  Plaintiff further requests "entry of a preliminary injunction that enjoins Defendants, and all those acting in concert with them, from acts of infringement and contributory infringement, including but not limited to (1) using all infringing plans and drawings, (2) constructing or continuing to construct infringing structures, including the house under construction for the McWhorters." *Id.*

(4) June 7, 2016 Copyright Assignment in which Vastano assigns the copyright, registration, and application for The Martinique, Manchester Plan, The Remington, and The Felton, which are listed in "Schedule A To Copyright Assignment";[4]

(5) a photograph of the architectural plans for the "McWhorters' Residence" that reference Johnson and DC Texas Designs;

(6) April 7, 2016 cease and desist letter from Plaintiff's counsel to the McWhorters asserting misapprpropriation and infringement of JP Homes's intellectual property rights in the architectural design of the custom home created by JP Homes for the McWhorters;

(7) April 7, 2016 cease and desist letter from Plaintiff's counsel to Johnson asserting misapprpropriation and infringement of JP Homes's intellectual property rights in the architectural designs of homes created by JP Homes for the McWhorters and Mr. and Mrs. James McAnally; and

(8) April 7 and 8, 2016 e-mails from Johnson responding to Plaintiff's cease and desist letter and disputing JP Homes's claim to intellectual property rights in the plans for the McWhorters' and McAnnallys' homes.

*See* Pl.'s Mot. App. 4-47 (Doc. 9). JP Homes clarifies that it is not seeking ex parte relief but instead is requesting that the court enter a TRO to enjoin Defendants' allegedly infringing activity as soon as they have been served and have a reasonable opportunity to respond to its Motion. By order dated June 22, 2016, the court advised that it would set a deadline for Defendants to respond to Plaintiff's Motion after all summons were served by Plaintiff and Plaintiff informed the court in writing when service had been effected. Plaintiff never informed the court in writing when service of process was effected as to each Defendant. The court, therefore, did not enter a briefing schedule expediting the deadlines for Defendants to respond to Plaintiff's Motion for injunctive relief. Instead, Trademark and Johnson filed their Answer to the Complaint and response to Plaintiff's Motion for injunctive

---

[4] Plaintiff's Exhibit D also includes a June 13, 2016 letter from Plaintiff's counsel to the Copyright Office, which includes a "Request for recordation of Copyright Assignment," Pl.'s Mot. App. 19, as well as a Copyright Office Receipt acknowledging receipt of "2 DCS" forms, a cover letter from Plaintiff's counsel, and payment with respect to "The Mitchell" on June 14, 2016; however, the relevance in this case of any copyright by JP Homes for "The Mitchell" is unclear. *See id.* at 20.

relief on July 19, 2016, in accordance with an agreed motion that was granted by the court. Trademark and Johnson also filed a joint motion to dismiss in which Trademark moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff's Lanham Act claim for  for lack of subject matter jurisdiction based on lack of standing, and Trademark and Johnson both moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's copyright infringement claims and Lanham Act claims for failure to state a claim upon which relief can be granted.

The McWhorters filed their Answer to Plaintiff's Complaint on July 13, 2016, followed by a response to Plaintiff's Motion for injunctive relief on July 20, 2016.  On July 26 and 27, 2016, Plaintiff filed separate reply and reply briefs to Defendants' responses to Plaintiff's Motion for injunctive relief.  In support of both replies, JP Homes submitted a supplemental declaration from Vastano, to which six additional exhibits are attached.  In addition, Plaintiff submitted declarations from Leslie Owens ("Owens"), a JP Homes sales representative, and Michelle Vastano, Vastano's wife; and corresponding exhibits in support of its reply to the McWhorters' response.

A court must always address a motion to dismiss for lack jurisdiction before considering other challenges or reaching the merits of any case because without jurisdiction, the court has no power to entertain the case.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) ("We hold . . . that the district court should not have issued the preliminary injunction . . . without determining whether

it had jurisdiction over the party enjoined."). Thus, before addressing the parties' contentions regarding the injunctive relief sought by Plaintiff and whether Plaintiff's claims should be dismissed under Rule 12(b)(6), the court must first addresses Trademark's Rule 12(b)(1) motion to dismiss Plaintiff's Lanham Act claim for lack of subject matter jurisdiction based on standing, which became ripe on August 23, 2016.

## II.    Motion to Dismiss Plaintiff's Lanham Act Claim for Lack of Standing (Doc. 19)

Plaintiff's Lanham Act claim is against Trademark. Trademark contends that Plaintiff's claim under 28 U.S.C. § 1125(a) of the Lanham Act should be dismissed for lack of federal subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing to assert the claim. In this regard, Trademark asserts:

> Plaintiff has not met the burden of proof to support that [it has] established elements for standing for this claim. Trademark . . . den[ies] each and every allegation which Plaintiff has asserted in its Original Complaint. However, even if taken as true, Plaintiff has failed to plead any facts which meet the high burden that any evidence exists that it has (1) been injured by the purported statements by Trademark . . . ; or (2) that any injury that Plaintiff may have suffered was caused by those actions of Trademark . . . Further Plaintiff's complaints that alleged "misleading statements" have caused them injury are speculative at best and (3) carry no weight of redressability if the trier of fact were to grant it a favorable decision.

Mot. to Dismiss 5 (citation omitted). JP Homes responds that its pleadings satisfy the test for standing set forth in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) for claims under § 1125(a) of the Lanham Act .

### A.    Whether the Motion to Dismiss for Lack of Standing Falls Under Rule 12(b)(1) or Rule 12(b)(6)

"Constitutional standing is a jurisdictional question." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011) (citing *Harold H. Huggins Realty, Inc. v. FNC*,

Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011)).  "[C]ourts have only treated constitutional standing as a Rule 12(b)(1) issue pertaining to subject matter jurisdiction." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (citing *Harold H. Huggins Realty, Inc.*, 634 F.3d at 795 n.2).  Statutory standing, on the other hand, "is not indicative of Article III jurisdictional standing" and is more properly addressed under Rule 12(b)(6).  *Camsoft Data Sys., Inc. v. Southern Elecs. Supply, Inc.*, 756 F.3d 327, 332 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1162 (2015); *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008).

Statutory standing involves the merits-based question of whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue" under a particular statute, that is, whether the plaintiff has a cause of action under the applicable statute.  *Lexmark Int'l, Inc.*, 134 S. Ct. at 1387-88.  Such an inquiry "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* at 388 n.4 (citation and internal quotation marks omitted); *Blanchard 1986, Ltd.*, 553 F.3d at 409 ("This question of whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, affecting statutory standing, not a jurisdictional question, affecting constitutional standing. In the words of the Supreme Court, once a plaintiff has suffered sufficient injury to satisfy the 'case and controversy' requirement of Article III, 'jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.'") (citation and footnotes omitted).  Unlike dismissals for lack of jurisdiction, which "are not considered adjudications on the merits and ordinarily do not . . . preclude a party from later litigating the same claim" after the jurisdictional defect is corrected, "[d]ismissals with prejudice for failure to state a claim . . . are 'decision[s] on the merits and essentially end[ ] the plaintiff's lawsuit.'" *Id.* at 409 n.15 (citations omitted).  Thus,

consideration under Rule 12(b)(6) of whether a plaintiff has statutory standing to assert a claim may result in the dismissal with prejudice of that claim.  *See id.*

Trademark's motion to dismiss Plaintiff's Lanham Act claim for lack of standing focuses on whether Plaintiff suffered damages as a result of its conduct.  Trademark's motion to dismiss for lack of standing, therefore, raises the issue of whether Plaintiff has statutory standing to assert a claim under section 1125(a) of the Lanham Act, not jurisdictional standing.  *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1390.  The court, therefore, addresses Trademark's and Johnson's motion to dismiss Plaintiff's Lanham Act claim for lack of standing under Rule 12(b)(6), rather than Rule 12(b)(1).

### B.    Standard for Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks,

citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

### C.    Plaintiff's Standing to Seek Relief Under the Lanham Act

Section 1125(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B). Section 1125(a), thus, "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1384. Plaintiff does not specifically reference § 1125(a) in its Complaint, but it appears that its Lanham Act claim against Trademark is for false advertising and unfair competition. *See* Pl.'s Compl. 1, 9 ("COUNT III—FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT").[5] Plaintiff also acknowledges in its response to the motion to dismiss that the Supreme Court's analysis in *Lexmark*, which dealt with a § 1125(a) claim under the Lanham Act, is relevant here in determining whether it has standing to sue under the Lanham Act. As Plaintiff asserts that it seeks relief under § 1125(a) of the Lanham Act, the court will apply the standing test adopted in *Lexmark* for such claims.[6]

---

[5] Plaintiff's passing reference to "unfair competition" only appears on the first and ninth pages of its Complaint. The Lanham Act includes a statement of its purposes, which includes "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition," 15 U.S.C. § 1127. According to *Lexmark*, the concept of "unfair competition" was understood to concern "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389-90. From this, the court concluded that in a suit for false advertising under § 1125(a), "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.*

[6] Trademark did not file a reply in support of its motion to dismiss to address whether *Lexmark's* standing analysis applies to Plaintiff's false advertising and unfair competition claim under the Lanham Act. Based on the reasoning in *Lexmark* regarding "unfair competition," Plaintiff's response to the motion to dismiss, and the manner in which Plaintiff pleaded its Lanham Act claim, the court concludes that Plaintiff's claim is one for relief under § 1125(a), even though Plaintiff refers to it as one for false advertising *and* unfair competition. The court makes this clarification because the Court in *Lexmark* made clear that it was only deciding "the appropriate analytical framework for determining a party's standing to maintain an action for false advertising under [ § 1125(a) of] the Lanham Act," not the framework for determining standing for the parties' other claims under federal copyright, patent, and antitrust law, or North Carolina's unfair-competition law. *Lexmark Int'l, Inc.*, 134 S. Ct. at 1385 and n.2.

In *Lexmark*, the Supreme Court set forth a two-part test for standing for false advertising claims under § 1125(a) of the Lanham Act, which requires courts to conduct a "zone-of-interests" and proximate-cause analysis.  *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1388-91.  For statutory standing, a plaintiff must satisfy the zone-of-interests test *and* proximate causality.  *See id.* at 1388-94.  The "zone-of-interests test" is used to determine whether a particular plaintiff falls within the class of plaintiffs that § 1125(a) protects and whom Congress authorized to sue.  *Id.* at 1388-90 (footnote omitted).  To fall within "the zone of interests in a suit . . . under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390.  Consumers or businesses who are misled into purchasing an inferior product are generally not considered to be within the zone of interests protected or regulated by § 1125(a).  *Id.* at 1390.

The "proximate-cause requirement" for statutory standing "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  *Id.* at 1390.  To satisfy this requirement, " a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* at 1391. Ordinarily, harms derivative of "misfortunes visited upon a third person" are too remote to have been proximately caused by a defendant; however, because "the Lanham Act authorizes suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute." *Id.* at 1390-91.

"Diversion of sales to a direct competitor" is considered to "be the paradigmatic direct injury from false advertising."  *Id.* at 1393.  As explained by the Supreme Court in *Lexmark*, the "classic Lanham Act false-advertising claim" is one in which a competitor induces customers to purchase

its products instead of those of the plaintiff by making false statements about its own goods or the competitor's goods.   *Id.* (quoting *Harold H. Huggins Realty*, 634 F.3d at 799 n.24) ("The paradigmatic case in which the directness of the plaintiff's asserted injury most clearly supports standing is one in which the defendant's 'literally false advertising about its own goods influenced its customers to buy its products instead of [the plaintiff]'s product.'") (quoting *Procter & Gamble Co.*, 242 F.3d at 563).   The Court in *Lexmark* recognized that "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation," but it declined to adopt a categorical rule prohibiting all suits under the Lanham Act by noncompetitors because doing so "would read too much into the Act's reference to 'unfair competition.'"   *Id.* at 1392 ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect only the false-advertiser's direct competitors.").

### D.     Analysis

Trademark does not dispute that Plaintiff falls within section 1125(a)'s "zone of interests."[7] Trademark instead contends that Plaintiff has failed to properly allege proximate cause because it has failed to plead facts, that if proved, would establish that JP Homes has "(1) been injured by the purported statements by Trademark; or (2) that any injury that [JP Homes] may have suffered was caused by those actions of Trademark."   Mot. to Dismiss 5 (citation omitted).   Trademark contends that Plaintiff's allegations that it has been injured as a result of  allegedly "misleading statements"

---

[7]  Although Trademark's motion does not address the zones of interest test for standing under the Lanham Act, the court determines that Plaintiff's alleged injury—loss of customers and damage to its business reputation—are the type of injuries to commercial interests that the Lanham Act protects. *See Lexmark Int'l, Inc.*, 134 S. Ct. at 1393.   JP Homes is suing as a business engaged in commerce that is within the control of Congress and whose position in the marketplace has been allegedly damaged by Trademark's and Johnson's false advertising. *See id.* (quoting 28 U.S.C. § 1127).   Accordingly, Plaintiff's Lanham Act claim falls within the zone of interests protected by the statute.   *Id.*

by Trademark are "speculative at best" and "carry no weight of redressability if the trier of fact were

to grant it a favorable decision." *Id.*

Regarding proximate cause, JP Homes responds as follows, contending that its pleadings

satisfy this requirement:

> JP Homes alleged sufficient facts to show that it has been, and will continue to be, injured as a proximate result of Trademark['s] . . . false advertising. JP Homes'[s] claim closely resembles the "classic Lanham Act false-advertising claim" described in *Lexmark*—Trademark . . . [is] trying to divert sales from JP Homes and induce customers to use Trademark based on Trademark's advertisement of JP Homes'[s] house design as Trademark's own. *Lexmark*, 134 S. Ct. at 1393. These damages are not "speculative" as Trademark . . . claim[s], but are the "paradigmatic direct injury from false advertising." *Id.* JP Homes has adequately alleged facts that support a plausible claim arising out of this injury. *Id.*

> In addition, the fact that JP Homes did not plead a specific monetary amount of damages does not detract from its standing to assert a Lanham Act claim. If a plaintiff proves that a defendant violated Section 1125(a) of the Lanham Act, the plaintiff is entitled to recover a defendant's profits, any damages sustained by plaintiff, and costs of the action. 15 U.S.C. § 1117(a). The Lanham Act also provides for injunctive relief to prevent future violations of Section 1125(a). 15 U.S.C. § 1116(a). In *Lexmark*, the Supreme Court acknowledged that "[e]ven when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief under § 1116(a) . . . or disgorgement of the defendant's ill-gotten profits under § 1117(a)." *Lexmark*, 134 S. Ct. at 1392 (internal citations omitted). JP Homes requested actual damages, consequential damages, statutory damages, and injunctive relief arising out of the claims asserted in its Complaint. *See* Pl.'s Complaint ¶ 68; at 11, Dkt. No. 2. JP Homes adequately pleaded for damages and injunctive relief.

> Furthermore, a judgment in JP Homes'[s] favor would redress JP Homes'[s] injuries. If the Court enters an injunction preventing Trademark . . . from using photographs of a home designed by JP Homes in its advertising, JP Homes'[s] future injuries will be redressed. If Trademark . . . receive[s] profits from customers who were diverted away from JP Homes, an award of profits and disgorgement would also redress JP Home[s]'s injuries.

Pl.'s Resp. to Mot. to Dismiss 6-7.

The court concludes that Plaintiff's Complaint includes sufficient allegations to satisfy the proximate cause component of standing under § 1125(a).  JP Homes alleges in pertinent part as follows:

8. JP Homes designs and builds custom homes. It has done so for approximately eight years in North Texas. JP Homes has been recognized as one of best homebuilders in the Dallas area by D Home Magazine.

. . .

29. Trademark advertises and markets itself using photographs of a house that JP Homes designed. This advertising and marketing effort includes on-line advertisements and photographs posted on Facebook, Houzz, Twitter, Pinterest, and Home and Land Magazine. Trademark's advertising and marketing efforts are misleading, as it would lead an ordinary consumer to believe that Trademark designed the house.

30. On the strength of JP Homes'[s] design, Trademark wrongfully received recognition as one of the best builders in the Dallas area by D Home Magazine. The photograph used in the D Home display ad for Trademark is a house that was designed by JP Homes. Trademark also received recognition as one of the Best of Garland in 2016.

31. Trademark is competing in the same neighborhoods and areas where JP Homes works. Trademark's efforts are likely to lead to consumer confusion.

61. Trademark has made a false or misleading statement of fact and has mislead consumers in a commercial advertisement about its products, including the designation of origin of the house depicted on Trademark's D Home Magazine display advertisement and the first page of Trademark's website.

62. These false and misleading statements were made on Facebook, Houzz, Twitter, Pinterest, and Home and Land Magazine and on the Trademark internet website.

64. The statements either deceived or had the capacity to deceive a substantial segment of potential customers. The statements are likely to mislead potential customers of the origin of the design of the house.

65. The deception is material and was likely to influence the purchasing decision.

67. JP Homes has been or is likely to be injured as a result of the false and misleading statements of . . . Trademark.

68. JP Homes seeks actual damages, attorney's fees, and preliminary and permanent injunctive relief against further false statements.

Pl.'s Compl. 2, 5, 6, 9, 10.  Based on these allegations, the court agrees with JP Homes that it has pleaded a "classic Lanham Act false-advertising claim." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1393. Because JP Homes alleges that Trademark falsely advertised and promoted its own products and services using a house plan designed by JP Homes, Plaintiff's allegations that it has suffered competitive or reputational injury as a result of Trademark's conduct  are not too remote.

Moreover, while JP Homes does not specify an amount of actual losses that it has or will sustain as a result of the competitive advantage allegedly obtained by Trademark in violation of the Lanham Act, this is not enough to deny Plaintiff standing under the Lanham Act.  As explained by the Court in *Lexmark*, "potential difficulty in ascertaining and apportioning damages is not . . . an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects."). *Lexmark Int'l, Inc.*, 134 S. Ct. at 1392. The reason for this is because a plaintiff "may still be entitled to injunctive relief under § 1116(a) (assuming it can prove a likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under § 1117(a)" even if it is unable to "quantify its losses with sufficient certainty to recover damages." *Id.*  In reaching this conclusion, the Court in *Lexmark* expressly declined to adopt the standing test used by some courts that consider the speculativeness of a plaintiff's damages claim as a relevant factor.  *See id.*  Plaintiff will of course have the ultimate burden of coming forward with evidence of injury proximately caused by Trademark's conduct. At

this stage, however, the court concludes, based on Plaintiff's pleadings, that it has standing to proceed and is entitled to a chance to prove its Lanham Act claim. Accordingly, the court will deny Trademark's motion to dismiss Plaintiff's Lanham Act claim for lack of standing (Doc. 19).

### III. Motion to Dismiss Plaintiff's Copyright Infringement and Lanham Act Claims for Failure to State a Claim Upon Which Relief Can Be Granted

Trademark and Johnson move to dismiss Plaintiff's claims against them for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and violations of the Lanham Act, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief upon which relief can be granted. Specifically, Trademark and Johnson contend that: (1) certain allegations in Plaintiff's Complaint are conclusory; (2) Plaintiff's copyright infringement claim fails under 17 U.S.C. § 412 because it does not allege that it held a valid copyright by January 13, 2016, for the plans that were provided to Trademark and Johnson by DC Texas Construction, LLC on or about October 13, 2015; and (3) Plaintiff's contributory copyright infringement claim fails because Plaintiff's allegations regarding Trademark's and Johnson's knowledge of any infringing activity, which they deny, are insufficient. Plaintiff filed a response in opposition to the motion, contending that the allegations in its Complaint, when considered as a whole, are sufficient to support claims for relief against Trademark and Johnson. Alternatively, Plaintiff requests leave to amend its pleadings with respect to any deficiency found by the court.

The court has already set forth the standard applicable to motions to dismiss under Rule 12(b)(6). The court, therefore, addresses the law applicable to Plaintiff's copyright infringement and Lanham Act claims, which are the subject of Trademark's and Johnson's Rule 12(b)(6) motion to dismiss.

A.      Copyright Infringement

"There are two types of liability for copyright infringement: direct and secondary. As its name suggests, the former applies when an actor personally engages in infringing conduct." *American Broadcasting Cos., Inc. v. Aereo*, 134 S. Ct. 2498, 2512 (2014) (Scalia, J., Thomas, J., Alito, J., dissenting).  Direct copyright infringement requires a plaintiff to allege that "(1) [it] owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).  The first element, ownership, is satisfied by allegations that the work is original and can be copyrighted and that the plaintiff has complied with all statutory formalities.[8] *Engineering Dynamics, Inc. v. Structural Software, Inc.*,

---

[8] Trademark's and Johnson's motion to dismiss references 17 U.S.C. § 412, which provides as follows regarding registration of a copyright:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> > (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> >
> > (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. Even if a plaintiff is precluded under this section from recovering statutory damages or attorney's fees for the defendant's infringement, it may still be entitled to an award of actual damages, the defendant's profits, and injunctive relief. *See* 17 U.S.C. §§ 502, 504. Thus, failure to comply with section 412's registration requirement is not necessarily fatal to a claim for copyright infringement.

26 F.3d 1335, 1340 (5th Cir. 1994).  The Fifth Circuit has "held that a plaintiff has complied with all statutory formalities for copyright registration [and ownership] when the Copyright office receives the plaintiff's application for registration, fee, and deposit."[9]  *See Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991)).  The term "deposit" refers to the material deposited for registration or number of copies of the work that are required by statute to be submitted.  *See Geoscan, Inc.*, 226 F.3d at 393 (citing 17 U.S.C. § 408(b)).

The copying element is met by: "(1) factual copying and (2) substantial similarity."  *Baisden*, 693 F.3d at 499 (quotation marks omitted).  Factual copying may be based on direct or circumstantial evidence.  *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). To be substantially similar, "the copyrighted expressions in the two works [must be] sufficiently alike that the copyright to the original work has been infringed."  *Id.*   In other words, from the prospective of a "layman" or "ordinary observer," "the copy must bear a substantial similarity to the protected aspects of the original."  *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015) (quoting *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001)).

Secondary liability applies when defendants are responsible for third-party infringement, even when the defendants themselves have not engaged in the infringing activity.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984).  Secondary copyright infringement applies

---

[9] JP Homes has pleaded that it submitted its application, fee, and deposit for "The Martinique" on February 2, 2016.  *See* Pl.'s Compl. ¶ 9.  The issue raised by Trademark and Johnson concerns the timing of Plaintiff's registration for "The Martinique" in light of their contention that they received the plans from the McWhorters on October 13, 2015, a fact which is outside of the pleadings and cannot be considered by the court in ruling on the motion to dismiss under Rule 12(b)(6).

when a defendant contributorily or vicariously infringes on another's copyrights. *See Metro-Goldwyn-Mayer Studios, Inc. v. Groksler, Ltd.*, 545 U.S. 913, 930 (2005). Under a vicarious theory of liability, a defendant is liable when it "profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *See id.* at 931 n.9. "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (citation and internal quotation marks omitted).

### B.     Lanham Act Claim

Plaintiff's Lanham Act claim is for false advertising and unfair competition. "The Lanham Act was enacted to provide protection against the unfair and misleading use of another's trademark." *Procter & Gamble Co.*, 242 F.3d at 563 (citation and footnote omitted). Specifically, the relevant Lanham Act provision, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. *See* 15 U.S.C. § 1125(a). Unlike trademark infringement, section 1125(a) permits "any person who believes that he or she is likely to be damaged" by the proscribed conduct to bring a civil action. *Id.* To state a claim for false advertising under the Lanham Act, a plaintiff must allege:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[ ] ha[s] been or [is] likely to be injured as a result.

*Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (citation

omitted); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

Unfair competition claims under the Lanham Act are governed by the same standard as those

for trademark infringement—the likelihood of confusion.  *Scott Fetzer Co. v. House of Vacuums*

*Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also Matrix Essentials, Inc. v. Emporium Drug Mart*,

988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section

1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause

confusion.'").  Thus, "[a]s a general rule, the same facts which would support an action for

trademark infringement would also support an action for unfair competition."  *Marathon Mfg. Co.*

*v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).

### C.    Analysis

After considering Trademark's and Johnson's Rule 12(b)(6) motion to dismiss, Plaintiff's

response, Plaintiff's pleadings, and applicable law, the court determines that Plaintiff's pleadings

and factual allegations are sufficiently specific at this juncture, and the matters raised by Trademark

and Johnson are better suited for a motion for summary judgment or trial in which competent

evidence outside the pleadings can be considered by the court.  Moreover, Trademark and Johnson

do not point to any Fifth Circuit or Supreme Court authority, and the court is aware of none, applying

a heightened pleading standard for copyright infringement or Lanham Act claims. *See Tempur-Pedic*

*Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 965 (S.D. Tex. 2012) ("Although it is true that

the [Lanham Act] prohibits material false statements . . . , the Court has not found, nor have the

parties cited, any decision from the Fifth Circuit subjecting section 43(a) claims to the heightened

pleading requirements of Rule 9(b).") (citation omitted); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 964 (N.D. Tex. 2006) ("Although Federal Rule of Civil Procedure 9 imposes heightened pleading standards for allegations of fraud or mistake, most causes of action, including copyright infringement claims, must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8."); *Healthpoint, Ltd. v. Allen Pharm., LLC*, Case No. SA-07-CA-0526-XR, 2008 WL 728333, at *2 n.4 (W.D. Tex. Mar. 18, 2008) ("[T]he Fifth Circuit has not held that a heightened pleading standard applies to false advertising claims under § 43(a) of the Lanham Act."). Accordingly, the court will deny Trademark and Johnson's Rule 12(b)(6) motion to dismiss Plaintiff's copyright infringement and Lanham Act claims (Doc. 19).

## IV. Plaintiff's Motion for TRO and Preliminary Injunction and the McWhorters' Motion to Strike Plaintiff's Reply Brief and Appendix or, Alternatively, Motion for Leave to File Surreply

Plaintiff's request for a TRO and preliminary injunction is premised on its copyright infringement claim against Defendants with respect to JP Homes's design for The Martinque.

### A.   Standard for TRO and Preliminary Injunction

There are four prerequisites for the extraordinary relief of preliminary injunction or TRO. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida   v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy

a cumulative burden of proving each of the four elements enumerated before a TRO or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction.

In considering these four requirements and deciding whether to grant injunctive relief, courts must keep in mind that the granting of a TRO or preliminary injunction "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion," and a TRO or preliminary injunction is necessary "to preserve the court's ability to render a meaningful decision on the merits." *Callaway*, 489 F.2d at 573. Thus, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction [or TRO]." *Id.* As the court determines that Plaintiff has not satisfied the irreparable harm requirement for a TRO or preliminary injunction, it focuses on this requirement.

### B.      Analysis—Irreparable Harm

In its Motion, Plaintiff contends that a "showing of a reasonable likelihood of success on the merits of a copyright infringement claim raises a presumption of irreparable harm." Pl.'s Mot. 5.[10]

---

[10] For support, Plaintiff relies on the following cases: *Value Grp., Inc. v. Mendham Lake Estates, L.P.*, 800 F. Supp. 1228, 1234 (D. N. J. 1992); *Worlds of Wonder v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 356 (N.D. Tex. 1986) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983)); and *Entertainment & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.*, 623 F. Supp. 647, 656 (S.D. Tex. 1985). The *Entertainment & Sports Programming Network* opinion cited by Plaintiff was subsequently amended and superseded by *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel, Inc.*, 623 F. Supp. 647 (S.D. Tex. 1985), which also concluded that irreparable harm is presumed when a copyright is infringed.

This rule, however, has not been adopted by the Fifth Circuit. *Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987); *see Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 537 (N.D. Tex. 2003) (citing *Plains Cotton* for the proposition that "a finding of copyright infringement does not give rise to a presumption of irreparable harm"); *GTE Card Servs. Inc. v. AT&T Corp.*, Case No. 3:96-CV-1970-D, 1997 WL 74712, at *2 (N.D. Tex.) (discussing *Plains Cotton* and rejecting "contention that a substantial threat of irreparable injury is to be presumed once there has been a showing of a substantial likelihood of success on the merits"), *aff'd*, 124 F.3d 191 (5th Cir. 1997)).

In *Plains Cotton*, a copyright infringement case involving commercial software, the Fifth Circuit held that the rule of presumed injury applied by the Third Circuit in *Apple Computer Incorporated v. Franklin Computer Corporation* "is not established in this circuit" and explained that it had previously "made it clear" that a TRO or preliminary injunction "will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction." *Id.* (citation omitted). The denial of the preliminary injunction in *Plains Court* was affirmed because the appellant had relied solely on its irreparable injury presumption argument, which was rejected by the court, and had failed to persuade the district court or circuit court that "any harm stemming from the alleged infringement . . . is not compensable in damages." *Id.* The Fifth Circuit in *Plains Cotton* also noted that, on the surface, the situation faced by the appellant did "not seem to present many possibilities for the infliction of unquantifiable damages." *Id.*

Like the appellant in *Plains Cotton*, JP Homes and all of the cases it cites rely on *Apple Computer* as support for the rule that irreparable injury is presumed upon a finding of likelihood of

success on the merits.   Additionally, the cases cited by JP Homes to support its presumed injury

argument predate the Fifth Circuit's opinion in *Plains Cotton* and are not binding on this court.   The

cases cited by Plaintiff are also inapplicable for other reasons.   The court in *Worlds of Wonder*

determined that, *even without the benefit of the injury presumption*, the plaintiff had demonstrated

that it would suffer irreparable harm if a preliminary injunction was not granted.   *Worlds of Wonder*,

658 F. Supp. at 356.   The court in *Value Group* similarly determined that the plaintiffs had

established irreparable harm and were not relying solely on the presumed irreparable injury.   *Value*

*Grp., Inc.*, 800 F. Supp. at 1234.   Accordingly, Plaintiff's reliance on these cases is misplaced, to the

extent it contends that presumed injury alone is sufficient to satisfy the irreparable harm requirement

for injunctive relief.   Consistent with *Plains Cotton* and this court's prior opinions, the court rejects

Plaintiff's argument that irreparable harm is presumed upon a showing of a reasonable likelihood

of success on the merits of its copyright infringement claim.   *See, e.g., H.D. Vest, Inc. v. H.D. Vest*

*Mgmt. & Servs., LLC*, Case No. 3:09-CV-390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009)

("Assuming without holding that Plaintiff established a substantial likelihood of prevailing on the

merits . . ., the court rejects its argument that a substantial threat of irreparable injury is to be

presumed in such a case. The Fifth Circuit has not so held, and authority from other district courts

is not binding on this court.").

In addition to its presumed injury argument, Plaintiff asserts, based on language in cases

outside of the Fifth Circuit, that it will suffer irreparable harm if construction of the McWhorters'

house and the alleged infringement continue because "[t]he failure to grant injunctive relief creates

the *possibility* of permanent loss of customers to a competitor or the loss of goodwill."   Pl.'s Mot.

5 (emphasis added); *see also* Pl.'s Reply 8 (citing *Value Grp., Inc.*, 800 F. Supp. at 1234; and

*Palmetto Builders and Designers, Inc. v. UniReal, Inc.*, 342 F. Supp. 2d 468, 473 (D. S. C. 2004),

which in turn cites *American Int'l Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir. 1978)).[11]

Plaintiff, however, presented no evidence when it initially filed its Motion to support its conclusory

assertion regarding the possibility of permanent loss of customers to a competitor or the loss of

goodwill. Plaintiff also made no attempt to explain or address in its Motion why any harm stemming

from Defendants' alleged infringement would inflict unquantifiable damages or harm that cannot

be adequately compensated by monetary damages.[12]

For the first time in its reply brief,[13] JP Homes offers additional reasons why it believes that

it will suffer irreparable harm if Trademark is allowed to finish building the McWhorters' house.

According to JP Homes: (1)  its competitive position and brand will be damaged since the

McWhorters' house is being built in a community in which JP Homes is established; (2) JP Homes

faces injury to its brand, reputation, and goodwill because Trademark "is building the McWhorter

---

[11] Plaintiff actually cited page 1324 of the New Jersey district court's opinion in *Value Group* to support its irreparable harm argument; however, this appears to be a typographical error, as there is no page 1324 in this opinion, and the court's analysis regarding irreparable harm in that case starts on page 1233.

[12] *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) (concluding that irreparable harm requires a showing that: (1) the harm to Plaintiff is imminent (2) the injury would be irreparable and (3) that Plaintiff has no other adequate legal remedy).

[13] As previously noted, JP Homes filed separate replies and reply briefs to the separate responses filed by (1) Trademark and Johnson, and (2) the McWhorters. Both reply briefs are substantially the same with respect to Plaintiff's irreparable harm analysis. Accordingly, to avoid duplication, the court's citations to Plaintiff's reply brief herein will be to Plaintiff's reply brief to the McWhorters' response to Plaintiff's Motion for injunctive relief (Doc. 29), unless otherwise specified. Plaintiff also filed two separate appendices in support of its replies. The two appendices are the same, except that the appendix filed with respect to the McWhorters' response contains Vastano's supplemental declaration and exhibits, in addition to the declarations for Owens and Michelle Vastano. The court's citations to Plaintiff's reply appendix will likewise be to the appendix responsive to the McWhorters' response to Plaintiff's Motion (Doc. 30).

House at a lower price, which will undercut JP Homes'[s] competitive advantage"; and (3) Trademark's "marketing practices rely on its sales, and [it] will *likely* market the McWhorter house as its own, without reference to JP Homes'[s] authorship," and "[t]his again, will cause an injury that is not readily quantifiable and will likely cause JP Homes to lose *potential* customers." Pl.'s Reply 7-8 (Doc. 26) (emphasis added).

 For support, Plaintiff relies on essentially the same case authority from other circuits.[14]  In addition, Plaintiff filed a supplemental declaration by Vastano, as well as new declarations by Owens and Michelle Vastano in support of its reply brief.

The new evidence filed by Plaintiff in support of its reply brief was filed without leave and is the subject of the McWhorters' objection and Motion to Strike and alternative request to file a surreply after conducting discovery.[15]  Plaintiff maintains in response to the McWhorters' Motion to Strike that it could not have anticipated the affirmative defenses raised by the McWhorters when it filed this lawsuit.  Plaintiff, however, fails to explain why it could not have come forward with

---

[14] Plaintiff cited one additional case in its reply, *Haas Outdoors, Incorporated v. Oak Country Camo., Incorporated*, 957 F. Supp. 835, 838 (N.D. Miss. 1997); however, the finding of irreparable harm in this case was based on the presumption already rejected by this court.

[15] The McWhorters contend that the claims and issues in this case involve "heavily disputed factual contentions" that will require "detailed discovery, depositions, [and] expert witnesses."  McWhorters' Mot. to Strike 1-2.  The McWhorters assert that they are entitled to develop fully their defenses, positions, and theories of law in advance of the trial of this cause.  JP Homes responds that it is not opposed to the McWhorters' request to file a surreply but opposes the Motion to Strike.  JP Homes also opposes the McWhorters' request to conduct discovery before filing their surreply because they have not indicated what additional discovery is needed to respond to JP Homes's Motion for injunctive relief, and any evidence they seek to support their affirmative defenses in response to JP Homes's Motion should be within their possession, custody, or control.  Additionally, JP Homes contends that the liability portion of its claims on the merits is fairly straightforward and can be resolved without the need for discovery.  JP Homes further contends that the McWhorters could have raised any concerns by conference after receiving it reply brief and appendix, rather than waiting eight days and then filing a motion to strike, and waiting thirteen days to confer.  To avoid further delay, JP Homes requests that the court require the McWhorters to file any surreply within three days of the filing of its August 9, 2016 response to the Motion to Strike.

evidence previously to support its assertion that it will suffer irreparable harm in the form of unquantifiable losses if Defendants are not enjoined from constructing the McWhorters' house or other homes using the designs that are the subject of Plaintiff's copyright infringement action. When "a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response," the court may in its discretion decline to consider them. *Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991). Alternatively, the court may allow the nonmovant an opportunity to file a response to the new materials, followed by an additional final reply brief by the movant. *See id.*

Here, Plaintiff does not oppose the McWhorters' alternative request to file a surreply to address the matters raised in its reply but opposes their request to conduct discovery before filing a surreply based on its contention that the McWhorters should already have in their possession information pertaining to their affirmative defenses. Plaintiff also opposes further delay in the resolution of their Motion for injunctive relief and requests that the McWhorters should be required to file any surreply on an expedited basis. In addition, Plaintiff requests for the first time in its reply in support of its Motion that the court consolidate the trial on the merits of Defendants' liability for copyright infringement with the preliminary injunction hearing before Defendants have the opportunity to conduct discovery in this case. JP Homes "acknowledges that the record on monetary damages issues has not been developed," but it maintains that "such issues could be bifurcated." Pl.'s Reply 3 (Doc. 25).

Because Plaintiff's new contentions that it will suffer irreparable harm and the evidence filed for the first time in support of its reply could have been presented in the first instance in support of

its Motion and was filed without leave of court, the court exercises its discretion and declines to consider the new arguments and evidence filed in support of Plaintiff's reply. Even if the court were to consider Plaintiff's new arguments and supplemental evidence, Plaintiff still not would be entitled to injunctive relief, as its new arguments and evidence do not support a finding of irreparable harm for a number of reasons.

Plaintiff contends, and Vastano asserts in his supplemental declaration, that JP Homes's competitive position in the community where Trademark is building the McWhorters' house, as well as North Texas generally, will be damaged. Plaintiff asserts, based on the Third Circuit's opinion in *Apple Computer*, that such damage is irreparable and incapable of being quantified. The facts of *Apple Computer*, however, are distinguishable from this case. As noted in Plaintiff's reply brief, *Apple Computer* involved a defendant's "*wholesale* copying of *many* of [Apple's] key operating programs." Pl.'s Reply 8 (quoting *Apple Computer, Inc.*, 714 F.2d at 1254) (emphasis added). Plaintiff's copyright infringement claim, on the other hand, is limited to Trademark's alleged copying of a single work, The Martinique, and Plaintiff does not contend that the house being built by Trademark is identical to The Martinique. Moreover, unlike the *Value Group* case cited by Plaintiff, there is no evidence that JP Homes devoted "significant time, effort, and money" in developing the architectural plan for The Martinique. *See Value Grp.*, 800 F. Supp. at 1232. Even assuming that JP Homes's competitive advantage *with respect to The Martinique will be compromised in the community where the McWhorters' house is being built*, Plaintiff's contention and Vastano's statement that this harm will also extend to and affect JP Homes's overall ability to compete using plans other than The Martinique to build homes in the same community or in North

Texas generally is purely speculative.  This in turn undercuts Plaintiff's contention that monetary damages for Trademark's infringing activity are inadequate or incapable of being quantified, especially when the alleged infringement is limited to Trademark's alleged copying of The Martinique plan to build the McWhorters' house.

Moreover, in its Complaint, JP Homes seeks with respect to its copyright infringement claim "actual damages, the Defendants' profits, direct and indirect profits, statutory damages, attorney's fees." Pl.'s Compl. ¶ 40.  JP Homes's acknowledgment that the record on monetary damages has not been fully developed also suggests that it will be able to develop a basis to support its request for an award of damages for either actual damages and profits or statutory damages and attorney's fees for its copyright infringement claim.  Thus, this acknowledgment by Plaintiff and its request for monetary damages appear to be at odds with its contention that an award of damages would be inadequate or incapable of being quantified.  Regardless, Plaintiff has not adequately explained why an award of the types of damages requested would be inadequate, and its contentions and evidence in this regard are conclusory and based on speculation.  While courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages and monetary damages would be inadequate.  *See Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001).

Plaintiff also asserts, and Vastano states, that JP Homes's brand, good will, and reputation as a custom home builder will be harmed and potential customers will not want to use JP Homes's designs or building services "*if* Trademark is building JP Homes'[s] designs at a lower price point

by lowering the quality of the construction materials" or "*[i]f* Trademark continues to palm off JP

Homes'[s] design as a cheaply made product." Pl.'s Reply App. ¶¶ 17-20 (emphasis added).  In

addition, Vastano states that JP Homes's reputation for building houses with unique home designs

will be damaged if another builder constructs a house that is the same or substantially similar to a

house created by JP Homes because potential customers will view JP Homes's designs as "common

or run-of-the-mill." *Id.* ¶ 17.  This reasoning, however, again conflates the harm that may result from

Trademark's alleged use of The Martinique design to build the McWhorters' house with JP Homes's

ability to market its designs and building services to potential customers for other architectural plans,

and Plaintiff has not established that harm resulting from Trademark's copying of The Martinique

cannot be adequately compensated by an award of monetary damages.

Plaintiff's contention that "Trademark's marketing efforts do not reference JP Homes'[s]

authorship, which will cause JP Homes to lose potential customers" also appears to conflict with its

contention and assumption that JP Homes will lose potential customers if they learn that Trademark

is building a house substantially similar to The Martinique using lower quality materials. Pl.'s Reply

7-8 (citing Vastano Supp. Decl. and Pl.'s Reply App. ¶¶ 17-20).  Further, Plaintiff has not presented

any evidence to demonstrate that Trademark uses lower quality materials to build houses or has

"palmed off" JP Homes's designs as a cheaply made product, and Vastano's statement that JP

Homes will be irreparably harmed *if* Trademark engages in such conduct is based on speculation and

is insufficient to establish irreparable harm.  *See, e.g.*, *Slide Fire Sols., L.P. v. Bump Fire Sys., LLC*,

3:14-CV-3358-M, 2016 WL 3361552, at *2 (N.D. Tex. Apr. 14, 2016) ("Plaintiff . . . fails to offer

any evidence to support Nichols's assertion that Bump Fire's alleged lower priced products have

changed the pricing expectations of Slide Fire's current or potential customers. Even if Plaintiff had

established loss of market share or price erosion, such evidence would not be sufficient, without more, to establish irreparable harm.").

Finally, Plaintiff's delay in seeking a TRO and preliminary injunction militates against the issuance of a TRO or preliminary injunction. *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request); *H.D. Vest, Inc.*, 2009 WL 1766095, at *4 (concluding that unexplained delay of approximately five months was sufficient to undercut claim of irreparable harm). Owens, who was the JP Homes sales representative that worked with the McWhorters, states in her declaration that, as early as December 2015, after she learned that the McWhorters were not going to move forward with JP Homes building their home and had visited a real estate agent who refers customers to builders that often use architectural plans created by others, she warned the McWhorters (through their new real estate agent) to refrain from using any part of the architectural plan created by JP Homes. Pl.'s Reply App. 20. According to Owens, the McWhorters' new real estate agent responded by asking what percentage of the plan designed by JP Homes would have to be changed to not be considered the same plan. *Id.* Thus, JP Homes strongly suspected that the McWhorters planned to use the house plan that is the subject of this action as early as December 2015 but waited until June 2016 before filing suit and seeking injunctive relief, after construction on the McWhorters' house was well underway.[16] In the interim period, JP Homes submitted its registration materials for The Martinique to the United States Copyright Office on February 2, 2016, and threatened to take legal action against Trademark and the McWhorters in April

---

[16] According to Plaintiffs' reply brief, the McWhorters' house is 35% or 40% complete.

2016, which reinforces the court's determination that JP Homes was aware of the allegedly infringing activity that it now seeks to enjoin for a substantial period of time before filing suit and seeking expedited injunctive relief.  Based on these facts, the court determines that Plaintiff's unexplained and undue delay of approximately six months strongly undercuts its claim of irreparable harm and contention regarding the need for urgent relief.

Having determined that Plaintiff has failed to satisfy the irreparable harm requirement, the court need not address the other factors for a TRO or preliminary injunction[17] and will deny Plaintiff's Motion for TRO and Motion for Preliminary Injunction for failure to satisfy all four requirements necessary for a TRO and preliminary injunction.  The court's denial of Plaintiff's Motion for TRO and Motion for Preliminary Injunction moots JP Homes's request for a hearing and request for expedited consideration of whether Defendants are liable for copyright infringement. Moreover, Defendants are entitled to conduct discovery before a trial or hearing on the merits of Plaintiff's copyright infringement claim against them, and while Plaintiff has not demanded that its claims be decided by a jury, Defendants have demanded a jury trial, and conversion of a preliminary injunction hearing to a trial on the merits cannot be in derogation of a party's right to a jury trial. *See* Fed. R. Civ. P. 65(a)(2).  Accordingly, the court will deny as moot Plaintiff's request for a hearing and expedited consideration of its copyright infringement claim.  The McWhorters' Motion to Strike will also be denied as moot in light of the court's decision not to consider the new arguments and materials filed in support of Plaintiff's reply brief without leave of court, and its

---

[17] The court's decision not to address the remaining factors is not a comment on the strength or weaknesses of the parties' contentions.

determination that Plaintiff would not be entitled to a TRO or preliminary injunction even if the court were to consider JP Homes's new evidence and arguments.

## V.      Conclusion

For the reasons stated, the court **denies** Defendants Trademark Custom Homes, Inc. and Eric Emil Johnson' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (Doc. 19); **denies** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7); **denies as moot** Plaintiff's request for a hearing on its Motion for Preliminary Injunction and request to consolidate the hearing on the Motion for Preliminary Injunction with the trial on the merits before Defendants have had the opportunity to conduct discovery (Docs. 25, 28); **denies as moot** Defendants Cash McWhorter's and Kimberly McWhorter's Motion to Strike Plaintiff's Reply Brief and Appendix to its Reply to McWhorters' Response in Opposition to Request for Temporary Restraining Order and Preliminary Injunction and, alternatively, Motion for Leave to File Surreply (Doc. 31); and **denies as moot** Plaintiff's Motion for Hearing (Doc. 41).

**It is so ordered** this 16th day of September, 2016.

Sam A. Lindsay
United States District Judge